UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DURRELL RICKEY MOORE,

    Petitioner,

v.

    CASE NO. 5:11-CV-11218
    JUDGE JOHN CORBETT O'MEARA
    MAGISTRATE JUDGE PAUL J. KOMIVES

LLOYD RAPELJE,

    Respondent.
_____/

# REPORT AND RECOMMENDATION

*Table of Contents*

I.   RECOMMENDATION: .................................................................... 2
II.  REPORT: ................................................................................. 2
    A.  *Procedural History* ............................................................... 2
    B.  *Factual Background Underlying Petitioner's Conviction* ............................... 3
    C.  *Standard of Review* ............................................................... 6
    D.  *Sufficiency of the Evidence (Ground I)* ............................................ 8
        1.   Clearly established Law ...................................................... 8
        2.   Analysis .................................................................... 11
    E.  *Mis-Scoring and Misapplication of Sentencing Guidelines (Count II)* ................. 14
        1.   Scoring of Offense Variable 7 ............................................... 14
        2.   Scoring of Offense Variable 10 .............................................. 15
    F.  *Recommendation Regarding Certificate of Appealability* ............................. 17
        1.   Legal Standard .............................................................. 17
        2.   Analysis .................................................................... 18
    G.  *Conclusion* ..................................................................... 19
III. NOTICE TO PARTIES REGARDING OBJECTIONS: ............................................... 19

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealabilty.

II.    REPORT:

A.    *Procedural History*

1.    Petitioner Durrell Moore is a state prisoner, currently confined at the Saginaw Correctional Facility in Freeland, Michigan.

2.    On May 27, 2008, petitioner was convicted of murder in the second degree, MICH. COMP. LAWS § 750.317, following a bench trial in the Wayne County Circuit Court. On June 11, 2008, he was sentenced to a term of 50-100 years' imprisonment as a fourth habitual offender, MICH. COMP. LAWS § 769.12.

3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

    I.    THE CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE BECAUSE THE PROSECUTION FAILED TO [DIS]PROVE THAT THE KILLING RESULTED FROM SELF-DEFENSE AND WAS MITIGATED TO MANSLAUGHTER DUE TO HEAT OF PASSION BASED ON ADEQUATE PROVOCATION.

    II.    SENTENCE VIOLATED DUE PROCESS BECAUSE IT WAS BASED ON INACCURATE INFORMATION AS A RESULT OF MIS-SCORING AND APPLICATION OF THE SENTENCING GUIDELINES.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Moore*, No. 286211, 2009 WL 4437807 (Mich. Ct. App. Dec. 3, 2009) (per curiam).

4.    Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Moore*, 486 Mich. 902, 780 N.W.2d 796 (2010).

5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on March 21, 2011. As grounds for the writ of habeas corpus, he raises the following claims:

    I.    THE CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE BECAUSE THE PROSECUTION FAILED TO [DIS]PROVE THAT THE KILLING RESULTED FROM SELF-DEFENSE AND WAS MITIGATED TO MANSLAUGHTER DUE TO HEAT OF PASSION BASED ON ADEQUATE PROVOCATION.

    II.    SENTENCE VIOLATED DUE PROCESS BECAUSE IT WAS BASED ON INACCURATE INFORMATION AS A RESULT OF MIS-SCORING AND APPLICATION OF THE SENTENCING GUIDELINES.

    6.    Respondent filed his answer on October 4, 2011. He contends that petitioner's claims are either without merit or are state law claims which are not cognizable upon habeas review.

    7.    Petitioner filed a reply to respondent's answer on November 2, 2011.

B.    *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction was accurately summarized in the trial court's finding of facts (original formatting, spelling errors, and grammar preserved).

> All right. The defendant, Durrell Moore, is charged in Count One with murder in the first degree, premeditation, and in the second Count felony murder for an offense that occurred on March 17th of 2007 in front of 5078 Rohns in the City of Detroit.
> The evidence presented in this case establishes beyond any doubt that in the early morning hours of March 17 of 2007 in front of 5078 Rohns that the deceased, Tracy Gore, was viciously beaten and kicked to death. This was a loss of life that resulted over a woman, who had been grabbed at an after-hours place. And then both sides, with the exception of the deceased, Mr. Gore, and Mr. Durrell Moore, who I think most charitably can be characterized as a coward in all of this, not having the sense to quit arguing and simply walk away.
> The evidence in this case has been reviewed by me. I have reviewed the Exhibits in this case, as well as my notes from this testimony, both on behalf of the prosecution and on the part of the defense.
> I find as a matter of fact that the defendant, Mr. Durrell Moore, did in fact play a major role in ratcheting up the hostilities that ended up leading to the death of Mr. Tracy Gore.
> In this particular case the security people at the after-hours place put the two groups of four out. I believe the testimony indicates that the security put them out at different times. That they did not go out one right after another. That there was some sort of pause.

Regrettably Ms. Keys and Ms. Long and Mr. Gore and Mr. Roby did not leave immediately. They didn't get in their cars and immediately drive away.

What happened was that when Ms. Steen and Ms. Robinson and Mr. Crawford and Mr. Moore left some minutes or minutes later, the matter that had escalated inside the house ended up getting increased in terms of antagonism, and much of that rests at the feet of Mr. Moore.

The coming out and referring to the derogatory terms to Ms. Key and Ms. Long, and then actually going up to Ebony Long and striking her, that was what I think really lit the fuse for this particular incident.

Mr. Moore didn't feel it was enough just to be verbally abusive to the women. He then became physically abusive to one of them; specifically Ebony Long, and that was the violence that was visited upon Ms. Long by Mr. Moore is what brought in Mr. Gore and his intervention.

Mr. Gore, the deceased, came to the aid of the of the woman who was being smacked around by the defendant. And in this particular case, as the medical examiner's report indicates, Mr. Moore found himself in the situation where he was sort of out muscled.

Now he certainly had the size and strength over Ebony Long, but according to the evidence introduced in this particular case, Mr. Gore, the deceased, had about 100 pounds on Mr. Moore.

Clearly the evidence indicates that when Mr. Gore intervened, he was getting the better of Moore. That Mr. Moore was finding himself in a more difficult fight than he found himself in with Ebony Long, and that it was at this point that the co-defendants, Crawford, Steen and Robinson, came to the aid of Mr. Moore. When the three defendants piled on Mr. Gore, Mr. Moore was able to get free.

Now at that particular point, if anybody, if any of the four defendants, had even one shred of sense what they would have done is they would have walked away, but that didn't happen.

What happened was that after Mr. Crawford had struck Mr. Gore and Ms. Steen and Ms. Robinson had hit Mr. Gore with beer bottles, that Mr. Gore became physically vulnerable, and at that point, Mr. Moore, according to the testimony, did in fact resume his violent interaction, and he started hitting and kicking Mr. Gore as did Mr. Crawford.

The evidence clearly indicates a concert of action where Mr. Moore, Mr. Crawford, Ms. Steen and Ms. Robinson did in fact beat and kick Mr. Gore and eventually only left him when Mr. Gore was helpless in the street and even began having seizures.

I do find that I reject any self-defense claim in this particular case. Clearly the testimony that is credible in this case indicates Mr. Moore was the aggressor. That he did not withdraw from any type of physical action and communicate that clearly to Mr. Gore.

But what he did was that when he couldn't take care of Mr. Gore, he piled on after the other co-defendants had helped render Mr. Gore vulnerable, and just to emphasize I do find that Mr. Gore's actions in this case were purely to intervene on behalf of Ms. Long, who had been unjustifiably and unlawfully assaulted initially by

Mr. Moore.

The question is with regard to Count One, do I believe beyond a reasonable doubt that this was murder in the first degree premeditation, or do I believe that it was murder in the second degree?

The instruction on murder in the first degree does in fact indicate that there must have been real and substantial reflection for long enough to give a reasonable person a chance to think twice about the intent to kill.

Well, it doesn't say how much time is needed. It is for the fact finder to decide if enough time passed under the circumstances of this case. The killing cannot be the result of a sudden impulse without thought or reflection.

By contrast, murder in the second degree indicates that the defendant must have had one of these three states of mind, an intent to kill, an intent to do great bodily harm, or knowingly creating a very high risk of death or great bodily harm, knowing that death or such harm would be the likely result of this particular action.

In this particular case I do have a reasonable doubt about whether the defendant acted with premeditation and deliberation. I do find beyond any reasonable doubt that at the time that Mr. Moore inflicted the blows that he did in concert with the others, that he was intending to do great bodily harm or certainly most specifically creating a very high risk of death or great bodily harm, knowing that the that death or such harm would be the likely result of his actions.

The medical examiner's report indicates there were at least eight blunt force impacts to the head imposed by Mr. Moore and/or the other co-defendants.

I do find that the defendant, Mr. Moore, did knowingly assist Mr. Crawford, Ms. Steen and Ms. Robinson in the commission of this particular offense and did in fact share their same intent and goal.

I do find beyond any reasonable doubt that the action of all four defendants caused the death of Mr. Gore and that Mr. Gore died as a result of the blunt force trauma that was inflicted.

And as stated, I find that Mr. Moore knowingly created a very high risk of death or great bodily harm, knowing that death or such harm would be the likely result of his actions, as well as demonstrating an intent to do great bodily harm, and that his actions were not justified or excused by any concept of self-defense or even defense of others in this particular matter.

So with regard to Count Two, the defendant Durrell Moore, will be found guilty of murder in the second degree.

With regard to the charge of felony murder, let me just say that for the record that if I were hearing the case of Mr. Crawford, I would have found Mr. Crawford on a waiver trial guilty of murder in the first degree, felony murder.

I do believe that Mr. Crawford's actions were in fact consistent with that particular concept. Mr. Moore, though I find falls into a different category. Mr. Moore is under the People's theory an aider and abettor in this particular matter.

The testimony that I believe is persuasive indicates that is was Mr. Crawford who went and took the identification and cell phone from Mr. Gore in this particular case. That it was not Mr. Moore.

There is some reference from Ms. Robinson and Ms. Steen in their testimony

>   regarding some words of encouragement, encouragement allegedly uttered by Mr. Moore. I did not find that particularly persuasive.
>
>   In this particular case I do find that the actions of Mr. Crawford were actions that he took on his own. That it was an after thought after the beating had in fact occurred.
>
>   There is no question that Mr. Moore and the other defendants benefitted. I do believe that the money that was taken in the larceny was used by all four defendants to buy food and liquor, which is certainly despicable conduct in and of itself. But I do not believe that the evidence establishes beyond a reasonable doubt that Mr. Moore aided and abetted in the felony murder. I believe it was committed by Mr. Crawford and Mr. Crawford alone.
>
>   So with regard to Count Two on the charge of felony murder, I will find Mr. Moore not guilty.

Tr., dated 5/27/08, at 3-9

C.   *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

>   (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts

the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not

7

require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Sufficiency of the Evidence (Ground I)*

Petitioner contends that the prosecution failed to provide sufficient evidence to prove his guilt on the second degree murder charge beyond a reasonable doubt because it failed to disprove the killing was done in self-defense and, therefore, it failed to disprove that the killing should have been mitigated to manslaughter. The court should conclude that petitioner is not entitled to habeas corpus relief on this claim.

1.    *Clearly established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences, and resolve conflicting inferences from the record in favor of the


prosecution. *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).

However, under the amended version § 2254(d)(1), a federal habeas court must apply a more deferential standard of review of the state court's decision. Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass. 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, *see Jackson*, 443 U.S. at 324, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also, Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999). While under *Jackson*, a reviewing court must look to state law for "substantive elements of the criminal offense, *Jackson*, 443 U.S. at 324, the deferential treatment to fact finders outlined in *Jackson* does not permit "fine-grained factual parsing" of established fact upon habeas review. *Coleman v. Johnson*, No. 11-1053, slip op. at 6 (U.S. Sup. Ct. May 29, 2012), 566 U.S. __ (2012). In essence, the Supreme Court has further cemented the standard enunciated in *Jackson*.

Under Michigan law, the common law crime of murder is defined as second degree murder, and is punishable by up to life imprisonment. *See* MICH. COMP LAWS § 750.317. To establish second degree murder, the prosecution must show that the defendant killed a human being with malice

aforethought. "The elements of second degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v. Goecke*, 457 Mich. 442, 463-64, 579 N.W.2d 868, 878 (1998). In order to show malice aforethought, the prosecution must establish one of three mental states on the part of the defendant at the time of the killing: (1) intent to kill; (2) intent to commit great bodily harm; or (3) intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984); *People v. Aaron*, 409 Mich. 672, 713-14, 299 N.W.2d 304, 319-20 (1980). As explained above, direct evidence of malice is not necessary; rather, malice may be inferred from evidence that establishes "the intent to do an act that is in obvious disregard of life-endangering consequences." *People v. Aldrich*, 246 Mich. App. 101, 123, 631 N.W.2d 67, 80 (2001) (internal quotations omitted).

In addition, in order to show voluntary manslaughter, the defendant must (1) have killed in the heat of passion, (2) the passion was caused by adequate provocation, and (3) there was not a lapse of time during which a reasonable person could control his passions. *People v. Mendoza*, 468 Mich. 527, 535, 664 N.W.2d 685 (2003). "Murder and manslaughter are both homicides and share the element of being intentional killings. However, the element of provocation . . . characterizes the offense of manslaughter [and] separates it from murder." *People v. Pouncey*, 437 Mich. 382, 388, 471 N.W.2d 346, 350 (1991). Not every form of provocation, however, will suffice to negate the malice element of second degree murder. The provocation must be of the sort "which would cause the reasonable person to lose control . . . . The law cannot countenance the loss of self-control; rather, it must encourage people to control their passions." *Id.* at 389.

Lastly, "the killing of another person in self-defense by one who is free from fault is justifiable homicide if , under all the circumstances, he honestly and reasonably believes that he is

10

in imminent danger of death or great bodily harm and that it is necessary for him to exercise deadly force." *People v. Riddle*, 467 Mich. 116, 119, 649 N.W.2d 30 (2002). However, "an act committed in self-defense but with excessive force or *in which defendant was the initial aggressor* does not meet the elements of lawful self-defense." *People v. Heflin*, 434 Mich. 482, 509, 456 N.W.2d 10 (1990) (emphasis added).

    2.    *Analysis*

Petitioner claims that the prosecution failed to disprove beyond a reasonable doubt that Mr. Gore's killing was not justified by self-defense. The law does not support petitioner's contention. Petitioner bases his self-defense claim on a fact pattern not accepted at trial. Petitioner claimed Mr. Gore attacked him from behind. The trial court accepted a different version of events, specifically, that petitioner was the aggressor against one of Mr. Gore's female companions and only then did Mr. Gore intervene on her behalf. It is settled law that the reviewing court does not make "credibility determinations in evaluating the sufficiency of the evidence." *United States v. Owusu*, 199 F.3d 329, 344 (6th Cir. 2000). It is the job of the fact finder at trial, not this court on habeas review, to resolve conflicts in evidence. *Jackson*, 443 U.S. at 326.

Furthermore, the court "must respect the executive province of the [fact finder] to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming the [fact finder] resolved all such matters in a manner which supports the verdict." *United States v. Gillock*, 866 F.2d 220, 222 (9th Cir. 1989) (quoting *United States v. Ramos*, 558 F.2d 545, 546 (9th Cir. 1977)). Therefore, this analysis will address only the facts adduced at trial.

In petitioner's case, the initial act of violence occurred when petitioner physically attacked one of Mr. Gore's female companions outside of the house. As such, petitioner was the aggressor

and is not entitled to claim self-defense. *Heflin*, 434 Mich. At 509; *see also People v. Butler*, 193 Mich. App. 63, 67, 483 N.W.2d 430, 432-33 (1992) ("the doctrine [of self-defense] only applies where the defendant . . . [was not] the initial aggressor."). Furthermore, petitioner's claim of self-defense is invalid because he did not have both an honest and reasonable belief that his life was in imminent danger. *Heflin*, 434 Mich. at 482.

After the initial scuffle where Mr. Gore got the better of petitioner and petitioner's co-defendants then incapacitated Mr. Gore, petitioner re-entered the altercation by stomping and kicking the immobilized Mr. Gore. While Mr. Gore was unconscious and immobilized, petitioner can in no way have reasonably believed that he was in imminent danger if he did not act in the manner he did. Furthermore, even if petitioner was correct in an honest and reasonable belief that he was in imminent danger, Michigan law imposes upon an actor a duty to "try to avoid the use of deadly force if he can safely and reasonably do so, for example by applying nondeadly (sic) force or by utilizing an obvious and safe avenue of retreat." *People v. Riddle*, 467 Mich. 116, 119, 649 N.W.2d 30, 35 (2002). While Mr. Gore lay on the ground unconscious and immobilized, petitioner had a safe and obvious avenue of retreat, specifically, by simply leaving the scene; Mr. Gore was in no position to harm or give chase to the petitioner. Instead, petitioner kicked and pummeled Mr. Gore. This act, especially while Mr. Gore was already unconscious, was clearly an act of deadly force and one that the law does not recognize as self-defense. *Id.*

Petitioner also claims that the prosecution failed to disprove beyond a reasonable doubt that Mr. Gore's killing should not have been mitigated to manslaughter based on the heat of passion and adequate provocation. The law also does not support petitioner's contention. Under Michigan law, a murder may mitigate to manslaughter if the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person

could control his passions. *Mendoza,* 468 Mich. at 535. Petitioner claims he was provoked by a sudden attack from Mr. Gore. The facts adduced at trial do not support this version of events, for the reasons stated above. Petitioner was not provoked because he started the physical confrontation by assaulting one of Mr. Gore's female companions. Furthermore, even if Mr. Gore had provoked petitioner by attacking him, not just any provocation will allow a retaliatory killing to mitigate to manslaughter. The provocation must be the sort "which would cause the reasonable person to lose control." *Pouncey*, 437 Mich. at 388. In other words, there are limits to the doctrine of provocation and it is not an excuse to allow one to exercise street justice over the slightest provocation with impunity. The Michigan Supreme Court summed up the provocation doctrine by stating that, "The law cannot countenance the loss of self-control; rather, it must encourage people to control their passions." *Id*. at 389.

Lastly, in order to mitigate to manslaughter due to provocation, there must not have been a lapse in time where the defendant could have gathered himself and controlled his passions. *Mendoza*, 468 Mich. at 535. In petitioner's case, Mr. Gore had bested petitioner in one-on-one combat. Petitioner's companions intervened and assailed Mr. Gore with bottles and fists, thus incapacitating him. During this time, petitioner was no longer provoked and had time to regain his composure and carefully consider his next action. Petitioner did have time to choose his next action, and that action was to stomp and pummel Mr. Gore.

Moreover, petitioner acted with malice, a required element of second degree murder, during the events that led to Mr. Gore's death. While Mr. Gore was incapacitated and unconscious on the ground, petitioner stomped and pummeled him. Clearly, petitioner had acted in a way that demonstrated an "intent to do an act that is in obvious disregard of life-endangering consequences." *Aldrich*, 246 Mich. App. at 123. When a person is knocked unconscious, it is obvious that further

kicking and pummeling that person may have life-endangering consequences.

Petitioner's habeas corpus petition on the first ground should be denied. The prosecution presented ample evidence to prove beyond a reasonable doubt that petitioner had acted with the necessary elements of second degree murder. The prosecution did not fail to disprove that petitioner, based on the facts accepted at trial, acted in self-defense or that his actions were of such a nature that Mr. Gore's killing should have been mitigated to manslaughter. On the contrary, petitioner acted with the necessary malice and was the initial aggressor in the confrontation that led to Mr. Gore's death. Petitioner's habeas petition should be denied on this ground.

E.   *Mis-Scoring and Misapplication of Sentencing Guidelines (Count II)*

    1.   *Scoring of Offense Variable 7*

Petitioner contends that the trial court erred in scoring OV-7 at fifty points. Petitioner argues that he did not go beyond the usual level of brutality attributable to a charge of second degree murder, or even assault and, therefore, the fifty points under OV-7 are unwarranted. Under OV-7, a trial court assesses fifty points if, during the commission of the offense, the victim "was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MICH. COMP. LAWS. § 777.37(1)(a). The Michigan Court of Appeals rejected petitioner's claim on this point, reasoning:

> The medical testimony revealed that there were multiple areas of trauma on the victim's head and legs, abrasions on his right forehead, his nose, and his right eye. The victim's right lower face and chin were both swollen and bruised....Upon internal examination, the medical examiner found three more impact sites and bleeding underneath the scalp. The medical examiner also found bleeding on the brain, as well as swelling of the brain. The medical evidence concerning the nature of [victim's] injuries adequately supported the trial court's conclusion that [victim] suffered an excessively brutal beating....The record evidence adequately supports the trial court's decision to score 50 points for OV 7.

*Moore*, 2009 WL 4437807 at *4.

Petitioner's claim that the trial court erred in scoring OV-7 does not raise a cognizable basis for habeas relief. A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Brenan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored the guidelines raises an issue of state law that is not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.).

Even if petitioner presented a cognizable basis for habeas relief on the OV-7 scoring, there was sufficient information to allow the court to score fifty points for that variable. Petitioner claims that, simply because the victim died, this alone can not support fifty points under OV-7. Petitioner is misguided in his application of the law since OV-7 scoring is not based on the end result of a defendant's actions, but of the defendant's *actions* themselves. Of particular relevance is the text of statute:

> A victim ***was treated with*** sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense.

MICH. COMP. LAWS. § 777.37(1)(a) (emphasis added). The plain language of the statute speaks to the actions the defendant took during the commission of the crime, not to the end result of the crime itself. In petitioner's case, petitioner stomped and kicked the victim while the victim was on the ground unconscious and, for all intents and purposes, no longer an able participant in the fight that led to his death. Regardless of outcome, stomping an unconscious victim in the head and face, as petitioner did, is amply sufficient for scoring fifty points under OV-7 as demonstrating

15

excessive brutality. *People v. James*, 267 Mich. App. 675, 680, 705 N.W.2d 724, 728 (2005).

    2.    *Scoring of Offense Variable 10*

Petitioner also contends that the trial court erred in scoring OV-10 at ten points. Petitioner argues that he did not act in an exploitative manner toward a vulnerable victim and, therefore, the ten points under OV-10 are unwarranted. Under OV-10, a trial court assesses ten points if, during the commission of the offense, the offender "exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MICH. COMP. LAWS. § 777.40(1)(b). The Michigan Court of Appeals rejected petitioner's claim on this point, reasoning:

> The record showed that even as the victim was lying helplessly on the ground unable to defend himself, defendant took advantage of his susceptibility to injury and continued to punch, kick, and stomp him. Defendant exploited the victim's physical disability at this point in the altercation by continuing to inflict further injury on the victim while the victim was incapacitated and wholly unable to defend himself. We conclude that ten points were properly scored for OV 10 in this case.

*Moore*, 2009 WL 4437807, at *4.

As covered in the previous section, petitioner's claims regarding trial court errors in scoring are not cognizable habeas claims. Furthermore, even if petitioner's claim presented a cognizable habeas claim, it would be without merit. In assessing points under OV-10, one of the factors the sentencing court should consider to determine whether the victim was vulnerable, in addition to physical or mental disability, disparity in strength, or intoxication, is whether the victim was asleep or unconscious. *People v. Huston*, 489 Mich. 451, 465, 802 N.W.2d 261 269-270 (2011). Petitioner is correct that the mere presence of one of these factors does not automatically equate a victim with vulnerability. MICH. COMP. LAWS. § 777.40(2). However, the defendant must have "exploited" one of the conditions previously mentioned in order for points under OV-10 to be assessed. *People v.*

16

*Cannon*, 481 Mich. 152, 159, 749 N.W.2d 257, 261 (2008).

Here, petitioner exploited Mr. Gore's vulnerability. Specifically, petitioner exploited Mr. Gore's physical disability and unconscious state in order to inflict further physical harm upon him. Mr. Gore was unconscious and unable to either defend himself or escape from petitioner's repeated blows. The trial court did not err in assigning ten points under OV-10.

    F.    *Recommendation Regarding Certificate of Appealability*

    1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *see* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard

17

is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

    2.    *Analysis*

If the Court accepts my recommendation on the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability. Petitioner's first claim is that there was insufficient evidence to convict him of second degree murder based on a theory of self-defense. As explained above, there was ample evidence to find beyond a reasonable doubt that petitioner acted with malice aforethought and did not act in self-defense or under adequate provocation. Petitioner initiated the fight that ended in Mr. Gore's death. Furthermore, petitioner stomped and kicked Mr. Gore while Mr. Gore was incapacitated and unconscious. Petitioner could not have had an honest and reasonable belief that he was in imminent danger necessary for self-

defense when he attacked the unconscious Mr. Gore. Petitioner also claims that the trial court erred in its scoring of Michigan's sentencing guidelines. It is beyond argument that such claims raise issues of state law that are not cognizable on habeas review. Even if such a claim were cognizable on habeas review, the trial court scored both OV-7 and OV-10 correctly, based on petitioner's actions which resulted in Mr. Gore's death. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

      G.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. Furthermore, if the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

      III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objection is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

<div style="text-align: right;">
s/Paul J. Komives<br>
PAUL J. KOMIVES<br>
UNITED STATES MAGISTRATE JUDGE
</div>

Dated: 6/19/12

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on June 19, 2012.
>
> s/Eddrey Butts
> Case Manager